UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

KIM HAVUNEN                                        :
  *Plaintiff*                                :
                                                  :
v.                                                :          C.A. No.
                                                  :
RELIANCE STANDARD LIFE                            :
INSURANCE COMPANY                                 :
  *Defendant*                              :

## **COMPLAINT**

Now comes the Plaintiff in the above entitled matter and complains as follows:

## **Nature of Action**

1. This is an action seeking an award to Plaintiff of long-term disability benefits under the group long-term disability plan (the "LTD Plan") established by D&H Therapy Associates, which is administered and insured by Reliance Standard Life Insurance Company ("Reliance Standard").  This is also an action seeking an award to Plaintiff of life insurance waiver of premium benefits under the group life insurance plan (the "Life Insurance Plan") established by D&H Therapy Associates, which is administered and insured by Reliance Standard.

2. The LTD Plan and Life Insurance Plan are collectively referred to as the "Plans."

3. Plaintiff seeks recovery of benefits pursuant to §502(a)(1)(B) of ERISA (29 U.S.C. §1132(a)(1)(B)).

4. At all relevant times, the LTD Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1), and as a result of her employment, Plaintiff was qualified under the LTD Plan as a "participant" as defined by 29 U.S.C. §1002(7).  This claim relates to benefits under the foregoing LTD Plan.

5.   At all relevant times, the Life Insurance Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1), and as a result of her employment, Plaintiff was qualified under the Life Insurance Plan as a "participant" as defined by 29 U.S.C. §1002(7).  This claim also relates to benefits under the foregoing Life Insurance Plan.

## Parties

6.   Plaintiff, Kim Havunen, is and was at all relevant times a resident of the State of Rhode Island.

7.   Defendant, Reliance Standard, upon information and belief, was at all relevant times an insurance company registered to do business in the State of Rhode Island and having a usual place of business located at 2001 Market Street, Suite 1500 Philadelphia, Pennsylvania 19103.

## Jurisdiction and Venue

8.   At all relevant times, Defendant had sufficient minimum contacts within the State of Rhode Island to satisfy the requirements for personal jurisdiction pursuant to Rhode Island's Long Arm Statute.

9.   Jurisdiction of the Court is based upon the Employee Retirement Income Security Act of 1974 (ERISA), and in particular 29 U.S.C. §1132(e)(1) and §1132(f).  In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the District Court jurisdiction over actions that arise under the laws of the United States.

10.   ERISA provides, at 29 U.S.C. §1133, a mechanism for administrative or internal appeal of benefit denials.  The administrative appeal process has been exhausted, is satisfied, and this dispute is ripe for suit.

11.     Venue is proper in this Court because Plaintiff is a resident of the State of Rhode Island, and Defendant is subject to this Court's personal jurisdiction with respect to this action. 28 U.S.C. §1391(c)(2).

## Statements of Fact

12.     Ms. Havunen was a physical therapy assistant and office manager for D&H Therapy Associates.

13.     Ms. Havunen became totally disabled under the terms of the LTD Plan on July 21, 2012.

14.     Under the LTD Plan, Ms. Havunen is entitled to LTD benefits if she meets the following definition of Total Disability:

> 'Totally Disabled' and 'Total Disability' mean, that as a result of an Injury or Sickness:
>> (1) during the Elimination Period and for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her Regular Occupation . . .
>> (2) after a Monthly Benefit has been paid for 24 months, an Insured cannot perform the material duties of Any Occupation.

15.     Ms. Havunen became totally disabled under the terms of the Life Insurance Plan on July 21, 2012.

16.     Under the Life Insurance Plan, Ms. Havunen is entitled to LWOP benefits if she meets the following definition of Total Disability:

> 'Total Disability', as used in the WAIVER OF PREMIUM IN EVENT OF TOTAL DISABILITY section, means an Insured's complete inability to engage in any type of work for wage or profit for which he/she is suited by education, training or experience.

17.     Ms. Havunen filed a claim for disability benefits with Reliance Standard on or about April 6, 2013.

18. Reliance Standard determined that Ms. Havunen's regular occupation was a physical therapy assistant (an occupation with medium exertion physical requirements) and administrative services manager (a sedentary occupation).

**Reliance Standard approved Ms. Havunen's LTD claim**

19. Reliance Standard investigated and determined that Ms. Havunen was totally disabled under the terms of the LTD Plan.

20. On or about July 25, 2013, a Reliance Standard nurse, Barbara Finnegan, RN, reviewed Ms. Havunen's medical information and determined: "Based on medical provided, claimant lacked consistent work function at date of loss."

21. A July 29, 2013 management approval note states the following:

> Based on review of the medical information received and reviewed to date the ***claimant has a lack of consistent work function at any exertion level***.  Review of the occupational data received from our vocational specialist indicates the claimant's occupation requires a medium and sedentary exertion level.  Since the claimant does not have the capacity to perform their [sic] occupation, I recommend the claim be approved at this time.  (Emphasis added)

22. On August 16, 2013, Reliance Standard wrote to Ms. Havunen informing her that her claim for LTD benefits was approved, and that she was eligible to receive monthly benefits effective January 17, 2013.  Reliance Standard also informed Ms. Havunen that the medical records on file supported her claim through June 1, 2013, and that updated medical records were needed.

23. Upon information and belief, Reliance Standard approved Ms. Havunen's LWOP claim effective on or about January 17, 2013.

4

24.     On October 4, 2013, a Reliance Standard nurse, Patricia Toth, RN, reviewed Ms. Havunen's updated medical information and determined: "Lack of consistent work function at any level is supported."

**The Social Security Administration determined that Ms. Havunen was disabled**

25.     On December 13, 2013, the Social Security Administration ("SSA") determined that Ms. Havunen was totally disabled and approved her claim for Social Security Disability Insurance ("SSDI") benefits.  The SSA also approved Ms. Havunen's claim for dependent SSDI ("DSSDI") benefits.

26.     Disability under the SSDI rules is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §404.1505.

27.     Ms. Havunen's base monthly SSDI benefit was $2,519, and her base monthly DSSDI benefit was $1,259.

**Reliance Standard offset Ms. Havunen's Social Security benefits**

28.     Reliance Standard reduced Ms. Havunen's monthly LTD benefit by the amount of her base monthly SSDI and DSSDI benefit.  This decreased the monthly LTD benefit that Reliance Standard paid to Ms. Havunen from $6,000 down to $2,222.

29.     Ms. Havunen has continuously met the SSA's definition of disability and received SSDI benefits through the date of filing this complaint.

30.     On January 18, 2014, Reliance Standard wrote to Ms. Havunen, informing her that it was continuing its review of her claim for LTD benefits.

31.   On or about April 5, 2014, Reliance Standard requested that its employee, Nurse Toth, perform an ongoing LTD file review.  The April 5, 2014 note requesting the file review states the following: "Please review records on file and advise of current r&ls [restrictions and limitations].  Is there potential for improvement in work function?"

32.   On or about April 21, 2014, Nurse Toth reviewed Ms. Havunen's updated medical records and determined the following as to Ms. Havunen's disability: "Lack of consistent work *at any level* is supported . . . It is unlikely that she will return to prior exertion level." (Emphasis added).

33.   On April 24, 2014, Reliance Standard wrote to Ms. Havunen advising that her LTD benefits were approved to January 17, 2015, provided that she continued to meet all provisions of the policy.  Reliance Standard also wrote the following, explaining that the definition of disability applicable to her claim would change from regular occupation to any occupation on January 17, 2015:

> Please note that your group policy provides that in order to be eligible for Long Term Disability Benefits beyond 24 months, you must be totally disabled from performing the material duties of Any Occupation. Any Occupation is one that your education, training, or experience will reasonably allow. If you continue to meet your group policy's definition of Total Disability, you will reach the end of the 24th month on January 17, 2015. An investigation will begin prior to this date in order to gather the necessary information to determine your continued eligibility for LTD benefits. For a more detailed description of this or any other policy provisions, please refer to your LTD certificate of group insurance.

**Reliance Standard determined that Ms. Havunen was disabled under the
LTD Plan's any occupation definition of disability**

34.     On August 19, 2014, Reliance Standard wrote the following to Ms. Havunen:

> To determine whether you are Totally Disabled from any
> occupation as required, we will be gathering updated information
> concerning your medical condition, education, training and
> experience. This information will be reviewed by RSL and could
> potentially lead us to conclude that your current medical condition
> does not render you incapable of performing the duties of any
> occupation for which you are suited by your education, training or
> experience.

35.     Reliance Standard commenced a review of Ms. Havunen's claim to determine whether

she was disabled from any occupation under the terms of the LTD Plan.

36.     On January 17, 2015, the definition of disability applicable to Ms. Havunen's claim

changed from regular occupation to any occupation.

37.     As part of its any occupation review, Reliance Standard gathered updated information

and medical records from Ms. Havunen and her medical providers.

38.     On or about May 15, 2015, Reliance Standard requested that its own employee nurse,

Robin Bickel, RN, perform a file review.

39.     The May 15, 2015 note requesting the file review states the following: "Please review

updated medical records from all providers and advise what, if any, restrictions and

limitations are supportive at present and ongoing.  Please address anticipated changes in

treatment or functionality as well as life expectancy."

40.     On or about May 18, 2015, after reviewing Ms. Havunen's updated information, Nurse

Bickel determined the following as to Ms. Havunen's disability: "The additional

information supports *lack of consistent work function at any level*.  It is highly unlikely

7

that the claimant will return to prior exertion level.  Life expectancy is full." (Emphasis added).

41.   Nurse Bickel certified Ms. Havunen's disability from any occupation under the terms of the LTD Plan through January 31, 2016.

42.   On or about May 18, 2015, Reliance Standard determined that Ms. Havunen was disabled from any occupation under the terms of the LTD Plan.

**Reliance Standard terminated Ms. Havunen's LTD benefits**

43.   On November 30, 2015, the SSA terminated Ms. Havunen's DSSDI benefits when her son reached the age of eighteen.  Ms. Havunen sent notice of the termination of her DSSDI benefits to Reliance Standard.  This increased the amount Reliance Standard was liable to pay Ms. Havunen each month from $2,222 to $3,481.

44.   On June 7, 2016, Reliance Standard nurse, Marianne Lubrecht, RN, performed a file review and concluded that the "[r]ecords suggest claimant has sedentary work function with the ability to stand and stretch and no work above midchest.  Improvement is unlikely life expectancy appears full."

45.   Nurse Lubrecht's June 7, 2016 opinion was against the clear weight of the evidence.

46.   In her June 7, 2016 opinion, Nurse Lubrecht failed to identify what, if anything, improved in Ms. Havunen's condition since May 18, 2015.

47.   Upon information and belief, in rendering her June 7, 2016 opinion, Nurse Lubrecht failed to consider whether Ms. Havunen had the ability to work consistently.

48.   Reliance Standard requested a Residual Employability Analysis from its employee, Jody Barach.

49.   For "Medical Information" used to perform her Residual Employability Analysis, Ms. Barach relied solely on Nurse Lubrecht's June 7, 2016 opinion.

50.   In her June 15, 2016 report, Ms. Barach concluded that Ms. Havunen had transferable skills to other occupations.

51.   Upon information and belief, Ms. Barach failed to consider whether Ms. Havunen had the ability to work consistently.

52.   Ms. Barach's June 15, 2016 opinion was against the clear weight of the evidence.

53.   On July 8, 2016, Reliance Standard terminated Ms. Havunen's LTD benefits, taking the position that she was capable of sedentary work activity and therefore no longer satisfied the definition of Total Disability under the LTD Plan beyond January 17, 2015.

54.   Reliance Standard's decision to terminate Ms. Havunen's LTD benefits was against the clear weight of the evidence.

55.   Reliance Standard's decision to terminate Ms. Havunen's LTD benefits was based upon Nurse Lubrecht's June 7, 2016 opinion and Ms. Barach's June 15, 2016 Residual Employability Analysis.

56.   Reliance Standard's decision to terminate Ms. Havunen's LTD benefits was contrary to the May 18, 2015 opinion of Nurse Bickel.

57.   Reliance Standard's decision to terminate Ms. Havunen's LTD benefits was contrary to the Social Security Administration's determination that Ms. Havunen is disabled.

58.   Upon information and belief, Reliance Standard approved Ms. Havunen's LWOP benefits through on or about October 19, 2016.

59.   Upon information and belief, Reliance Standard's decision to approve Ms. Havunen's LWOP benefits was based upon the same medical and vocational information used by Reliance Standard to approve the LTD claim.

60.   On October 20, 2016, Reliance Standard wrote to Ms. Havunen, informing her that her LWOP benefits were terminated, taking the position that the medical and vocational information no longer supported her continued total disability beyond January 17, 2015.

61.   Reliance Standard's decision to terminate Ms. Havunen's LWOP benefits was against the clear weight of the evidence.

62.   Upon information and belief, Reliance Standard's decision to terminate Ms. Havunen's LWOP benefits was based upon the same medical and vocational information used to terminate the LTD claim.

**Ms. Havunen appealed Reliance Standard's claim denials**

63.   By letter dated December 29, 2016, Ms. Havunen timely filed her appeal of the LTD claim denial in accordance with the terms of the LTD Plan, and her appeal of the LWOP claim denial in accordance with the terms of the Life Insurance Plan.

64.   Reliance Standard received Ms. Havunen's letter of appeal on December 29, 2016.

65.   Reliance Standard was subject to statutory and internal guidelines that set strict deadlines for completion of an appeal review.

66.   Under the LTD Plan, Reliance Standard has a duty to notify a claimant of its benefit determination on review as follows:

> The claimant (or their authorized representative) shall be notified of the benefit determination on review within a reasonable period of time, but not later than 45 days after receipt of the claimant's timely request for review, unless it is determined that special circumstances require an extension of time for processing the appeal. If it is determined that an extension of time for processing

is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial 45-day period. In no event shall such extension exceed a period of 45 days from the end of the initial period. The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the determination on review is expected to be rendered.

Calculating time periods. The period of time within which a benefit determination on review is required to be made shall begin at the time an appeal is timely filed, without regard to whether all the information necessary to make a benefit determination on review accompanies the filing. In the event that a period of time is extended as above due to a claimant's failure to submit information necessary to decide a claim, the period for making the benefit determination on review shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information.

67.     The U.S. Department of Labor Regulations ("DOL Regulations") promulgated pursuant

to ERISA Sections 503 and 505, 29 U.S.C. §§ 1133, 1135, provide the following:

> (i) Timing of benefit determination on review –
> (1) In general.
> (i) . . . the plan administrator shall notify a claimant in accordance with paragraph (j) of this section of the plan's benefit determination on review within a reasonable period of time, but not later than 60 days after receipt of the claimant's request for review by the plan, unless the plan administrator determines that special circumstances . . . require an extension of time for processing the claim.  If the plan administrator determines that an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial 60-day period.  In no event shall such extension exceed a period of 60 days from the end of the initial period.  The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the plan expects to render the determination on review.
> . . .
> (3) Disability claims.
> (i) . . . claims involving disability benefits (whether the plan provides for one or two appeals) shall be governed by paragraph (i)(1)(i) of this section, except that a period of 45 days shall apply instead of 60 days for purposes of that paragraph.

. . .

(4) Calculating time periods. For purposes of paragraph (i) of this section, the period of time within which a benefit determination on review is required to be made shall begin at the time an appeal is filed in accordance with the reasonable procedures of a plan, without regard to whether all the information necessary to make a benefit determination on review accompanies the filing.  In the event that a period of time is extended as permitted pursuant to paragraph (i)(1), (i)(2)(iii)(B), or (i)(3) of this section due to a claimant's failure to submit information necessary to decide a claim, the period for making the benefit determination on review shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information.

29 C.F.R. §§ 2560.503-1(i)(1)(i), 2560.503-1(i)(3)(i), 2560.503-1(i)(4).

68.   On or about January 17, 2017, Ms. Havunen received a letter from Reliance Standard dated January 12, 2017, confirming receipt of her appeal.

69.   Prior to December 29, 2016, Reliance Standard had more than sufficient evidence that Ms. Havunen remained totally disabled under the terms of the Plans.

70.   Reliance Standard engaged its exam vendor MES Solutions to set up an exam of Ms. Havunen.

71.   It was unreasonable for Reliance Standard to require Ms. Havunen to submit to a physical exam given that Reliance Standard already possessed more than sufficient evidence establishing her entitlement to her full LTD benefits under the LTD Plan.

72.   It was unreasonable for Reliance Standard to require Ms. Havunen to submit to an exam on appeal.

73.   Upon information and belief, Reliance Standard did not have a good faith basis for sending Ms. Havunen for an exam.

74.    Upon information and belief, Reliance Standard sent Ms. Havunen for an exam in an effort to build a case for denying her appeal.

75.    On or about January 20, 2017, Ms. Havunen received a letter from MES Solutions dated January 16, 2017, advising that she had been scheduled for an exam with Jay M. Burstein, MD (occupational medicine).

76.    Dr. Burstein is the medical director of "Corporate Care."  Corporate Care advertises the following on its website: "…hundreds of businesses and municipalities count on Corporate Care for all their occupational and environmental health needs. We've assembled a team of trained professionals, including board-certified, occupational and environmental specialists who *focus on returning injured employees back to work promptly* and while keeping you well informed every step of the way."  (Emphasis added.)

77.    Ms. Havunen wrote to Reliance Standard on January 27, 2017 and objected to having to submit to an exam by Dr. Burstein.

78.    In support of her appeal, Ms. Havunen provided Reliance Standard with more than sufficient evidence establishing her disability and entitlement to full LTD and LWOP benefits under the LTD Plan and the Life Insurance Plan.

**Reliance Standard failed to render a decision on appeal**

79.    As of February 12, 2017, forty-five (45) days had passed since Reliance Standard received Ms. Havunen's December 29, 2016 appeal.

80.    As of February 12, 2017, Reliance Standard had not notified Ms. Havunen that it was tolling or extending the time to render an appeal decision.

81.    In violation of 29 C.F.R. §§ 2560.503-1(i)(1)(i) and 2560.503-1(i)(3)(i), Reliance
       Standard failed to provide Ms. Havunen with written notice of an extension of time to
       render a decision on her appeal prior to the termination of the initial forty-five (45) day
       period.

82.    Reliance Standard was required to render a decision on Ms. Havunen's appeal by on or
       about February 12, 2017.

83.    Reliance Standard failed to render a decision on Ms. Havunen's appeal by on or about
       February 12, 2017.

84.    Upon information and belief, there were no special circumstances that warranted
       Reliance Standard extending the time that it had to render a decision on Ms. Havunen's
       appeal.

85.    On or about February 13, 2017, Ms. Havunen received a letter from Reliance Standard
       dated February 7, 2017, which stated the following:  "While we are physically incapable
       of forcing Ms. Havunen's attendance, we again reiterate our right to have her examined
       and note that any refusal to attend this examination will be taken into consideration in
       reaching a benefit determination, including an assessment of whether she meets the
       policy's definition of Total Disability, whether she has perfected her claim and whether
       she has cooperated under the policy's terms."  Reliance Standard did not agree to allow
       the exam to be video or audio taped.

86.    Upon information and belief, Reliance Standard would have denied Ms. Havunen's
       appeal if she refused to submit herself to examination by Dr. Burstein.

87.    As required by Reliance Standard, Ms. Havunen presented herself for examination at Dr.
       Burstein's office, Corporate Care, on February 14, 2017.  The examination consisted of

the following:  Ms. Havunen spoke with Dr. Burstein's medical assistant for 35 minutes, spoke with Dr. Burstein for 20 minutes, and was physically examined by Dr. Burstein for 10 minutes.

88.   On March 3, 2017, Ms. Havunen wrote to Reliance Standard asking for a status of its appeal review.

89.   On or about March 13, 2017, Ms. Havunen received a letter from Reliance Standard dated March 6, 2017 stating the following: "We are currently awaiting the report from the independent physician [Dr. Burstein]. Once the independent physicians report is received and we have an opportunity to review it with our medical staff, we will update you or inform you should we determine that additional information would be required as part of this review. In addition, we will also provide a copy to you for review prior to our determination."

90.   Dr. Burstein's report to Reliance Standard is dated February 14, 2017, the same day of the examination.

91.   Against the clear weight of the evidence, Dr. Burstein concluded in his report that Ms. Havunen "is capable of working an 8 hour shift" and that "return to [ ] work will not be unduly injurious to her health."

92.   On or about March 13, 2017, after Reliance Standard's appeal decision deadline had passed, Ms. Havunen received a letter from Reliance Standard dated March 10, 2017 purporting to toll the time to render an appeal decision.

93.   Reliance Standard wrote the following to Ms. Havunen in its letter dated March 10, 2017:

> This letter serves as an update regarding the appeal review of Ms. Havunen's claim for Long Term Disability (LTD) benefits. Per your request, enclosed is a copy of the independent physicians [Dr. Burstein's] review.

15

> **Please be aware that because statutory and internal guidelines set strict deadlines for completion of an appeal review, the additional information will toll the statuary [sic] time frames for reaching an appeal determination until the information is received.**
>
> Once Ms. Havunen's physician(s) have an opportunity to review the report, please provide a copy of her physicians review. Once we have received their review and we have an opportunity to review it with our medical staff, we will update you or inform you should we determine that additional information would be required as part of this review.
>
> **Please have Ms. Havunen's physicians provide their feedback to us no later than March 30, 2017.** (Emphasis orig.)

94.     On April 6, 2017, Reliance Standard received a letter from Ms. Havunen with a report from her neurosurgeon, Michael Olin, M.D., responding to and disagreeing with Dr. Burstein's opinion.  Ms. Havunen asked that Reliance Standard reinstate her claim and pay all retroactive benefits.

95.     Prior to April 6, 2017, Reliance Standard possessed more than sufficient written proof of Ms. Havunen's continued Total Disability covered by the LTD Plan since her initial date of disability on July 21, 2012.

96.     On April 24, 2017, Ms. Havunen sent Reliance Standard a letter advising that she "was diagnosed with melanoma on April 21, 2017.  She is scheduled to undergo a margins tissue surgery to remove a skin lesion on April 28, 2017.  She is expected to undergo further assessment after the surgery. We will provide you with more information when we receive it."

97.     Ms. Havunen's melanoma diagnosis was unrelated to the conditions that formed the basis for her claim and appeal.

98.   On June 23, 2017, Ms. Havunen received a letter from Reliance Standard dated June 16,

2017 stating the following:

> I am responding to your letter dated April 24, 2017 in regards to
> Ms. Havunen being diagnosed with melanoma on April 21, 2017.
> You indicated that you would be providing information, however,
> we have not received this information. If you wish to submit this
> additional information, please do so by July 1, 2017, otherwise we
> will proceed with our determination. Please be aware that because
> statutory and internal guidelines set strict deadlines for completion
> of an appeal review, the additional information will toll the
> statuary time frames for reaching an appeal determination until the
> information is received.

99.   Upon information and belief, Reliance Standard's June 23, 2017 letter was a pretext for

excusing its failure to render a timely appeal decision.  Reliance Standard's deadline to

render an appeal decision had already passed.

100.  As of the time of filing this complaint, Ms. Havunen has not received a decision from

Reliance Standard on her December 29, 2016 appeal.

101.  Reliance Standard failed to render a decision on Ms. Havunen's appeal in violation of the

terms of the LTD Plan.

102.  Reliance Standard failed to render a decision on Ms. Havunen's appeal in violation of the

terms of the Life Insurance Plan.

103.  Reliance Standard failed to render a decision on Ms. Havunen's appeal in violation of 29

C.F.R. §§ 2560.503-1(i)(1)(i) and 2560.503-1(i)(3)(i).

104.  As a result of Reliance Standard's failure to respond to Plaintiff's LTD appeal, Plaintiff's

appeal is deemed denied.

105.  As a result of Reliance Standard's failure to respond to Plaintiff's LWOP appeal,

Plaintiff's appeal is deemed denied.

106.  In failing to render a decision on Ms. Havunen's appeal, Reliance Standard failed to satisfy the applicable standard of care provided in 29 C.F.R. §2560.503-1.

107.  A decision made in the absence of the procedural protections of 29 C.F.R. §2560.503-1 should not be entitled to any judicial deference.

108.  Upon information and belief, Reliance Standard failed to follow a reasonable claims procedure that would yield a decision on the merits of Ms. Havunen's claim.

109.  Reliance Standard failed to exercise any discretion that it purports to have reserved under the LTD Plan and/or Life Insurance Plan.

110.  Ms. Havunen's claims should be reviewed *de novo* by the court.

111.  At all relevant times, Plaintiff has been disabled under the terms of the LTD Plan.

112.  At all relevant times, Plaintiff has been disabled under the terms of the Life Insurance Plan.

113.  Upon information and belief, Reliance Standard failed to comply with its own internal guidelines, including but not limited to, those pertaining to the timing of benefit determinations on appeal.

114.  Upon information and belief, Reliance Standard's failure, to comply with its own internal guidelines and 29 C.F.R. §2560.503-1, was not inadvertent or harmless.

115.  Plaintiff has been prejudiced by Reliance Standard's wrongful denial of benefits and Reliance Standard's failure to render a timely appeal decision.

116.  Reliance Standard's wrongful denial of benefits and failure to render a timely appeal decision has caused Ms. Havunen financial hardship.

117.  Since June 7, 2016, Ms. Havunen has been forced to live without the $3,481 of monthly LTD benefit on which she relies.

118.   Upon information and belief, Reliance Standard was responsible for paying Plaintiff's LTD benefits.

119.   Upon information and belief, Reliance Standard was responsible for providing Plaintiff's LWOP benefits.

120.   Upon information and belief, Reliance Standard had a financial conflict of interest serving as (a) the fiduciary to determine LTD Plan and Life Insurance Plan beneficiaries' entitlement to benefits, and (b) the entity responsible for paying such benefits from its own assets.

121.   Upon information and belief, Reliance Standard had a financial incentive to terminate Plaintiff's Plan benefits.

122.   Upon information and belief, Reliance Standard had a financial incentive to delay determination of Ms. Havunen's appeal.

123.   Upon information and belief, Reliance Standard made errors administering Ms. Havunen's appeal that were the result of Reliance Standard's conflict of interest.

124.   Upon information and belief, Reliance Standard's wrongful conduct during the administration of Plaintiff's claim was the result of Reliance Standard's conflict of interest.

125.   Upon information and belief, Reliance Standard's decision to terminate benefits was the result of Reliance Standard's conflict of interest.

126.   Upon information and belief, Reliance Standard's failure to render an appeal decision was the result of Reliance Standard's conflict of interest.

127.   Based on the evidence submitted to Reliance Standard or otherwise available to Reliance Standard, establishing that Plaintiff has met the Plans' definitions of disability and other

conditions for full coverage continuously since the onset of her disability to the present, Plaintiff is entitled to payment of all Plan benefits owed to her plus interest on all improperly withheld payments.

## COUNT I
### (Enforcement of Plaintiff's Rights Under the LTD Plan – ERISA 29 U.S.C. §1132(a)(1)(B))

128.   Plaintiff repeats and reaffirms the above paragraphs, as though fully set forth herein.

129.   Plaintiff is entitled to enforcement of all of her rights under the LTD Plan, including but not limited to, payment of all past and present monthly disability insurance benefits.

130.   Plaintiff is entitled to interest on all overdue payments.

131.   Because Reliance Standard failed to respond to Plaintiff's appeal, her appeal should be deemed denied and this case should be reviewed *de novo*.

132.   Pursuant to R.I.G.L. § 27-7-28, Reliance Standard has no discretion under the LTD Plan, therefore, the Court's review of Plaintiff's claim is *de novo*.

## COUNT II
### (Enforcement of Plaintiff's Rights Under the Life Insurance Plan – ERISA 29 U.S.C. §1132(a)(1)(B))

133.   Plaintiff repeats and reaffirms the above paragraphs, as though fully set forth herein.

134.   Plaintiff is entitled to enforcement of all of her rights under the Life Insurance Plan, including but not limited to, reinstatement of her life insurance waiver of premium benefits.

135.   Because Reliance Standard failed to respond to Plaintiff's appeal, her appeal should be deemed denied and this case should be reviewed *de novo*.

136.   Pursuant to R.I.G.L. § 27-7-28, Reliance Standard has no discretion under the Life Insurance Plan, therefore, the Court's review of Plaintiff's claim is *de novo*.

## COUNT III
### (Breach of Fiduciary Duty Under the LTD Plan
### – ERISA 29 U.S.C. §1104)

137.   Plaintiff repeats and reaffirms the above paragraphs, as though fully set forth herein.

138.   To the detriment of Plaintiff, Reliance Standard failed to discharge its duties with respect to the LTD Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plans.

139.   To the detriment of Plaintiff, Reliance Standard failed to discharge its duties with respect to the LTD Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

## COUNT IV
### (Breach of Fiduciary Duty Under the Life Insurance Plan
### – ERISA 29 U.S.C. §1104)

140.   Plaintiff repeats and reaffirms the above paragraphs, as though fully set forth herein.

141.   To the detriment of Plaintiff, Reliance Standard failed to discharge its duties with respect to the Life Insurance Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plans.

142.   To the detriment of Plaintiff, Reliance Standard failed to discharge its duties with respect to the Life Insurance Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that

a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

## COUNT V
**(Clarification of Plaintiff's Rights to Future Benefits Under the Terms of the LTD Plan – ERISA 29 U.S.C. §1132(a)(1)(B))**

143.    Plaintiff repeats and reaffirms the above paragraphs, as though fully set forth herein.

144.    Pursuant to 29 U.S.C. §1132(a)(1)(B), Plaintiff is entitled to clarification of her rights to future benefits under the terms of the LTD Plan.

145.    Plaintiff seeks a declaration that she has been continuously disabled under the terms of the LTD Plan from January 17, 2015 through the present, and that she is entitled to any and all benefits wrongfully withheld for said period.

146.    Plaintiff further seeks a declaration that she is entitled to interest on all benefits determined to have been wrongly withheld from her under the LTD Plan.

## COUNT VI
**(Clarification of Plaintiff's Rights to Future Benefits Under the Terms of the Life Insurance Plan – ERISA 29 U.S.C. §1132(a)(1)(B))**

147.    Plaintiff repeats and reaffirms the above paragraphs, as though fully set forth herein.

148.    Pursuant to 29 U.S.C. §1132(a)(1)(B), Plaintiff is entitled to clarification of her rights to future benefits under the terms of the Life Insurance Plan.

149.    Plaintiff seeks a declaration that she has been continuously disabled under the terms of the Life Insurance Plan from January 17, 2015 through the present, and that she is entitled to reinstatement of her life insurance waiver of premium benefits.

## COUNT VII
**(Declaration of Plaintiff's Rights Under the LTD Plan – 28 U.S.C. §2201)**

150.    Plaintiff repeats and reaffirms the above paragraphs, as though fully set forth herein.

151.    Based on the above asserted facts and allegations, this matter constitutes a case in controversy under the Declaratory Judgment Act, 28 U.S.C. §2201 and Plaintiff is entitled to a declaratory judgment establishing her rights under the LTD Plan.

152.    Plaintiff seeks a declaration that she has been continuously disabled under the terms of the LTD Plan from January 17, 2015 through the present, and that she is entitled to any and all benefits wrongfully withheld under the LTD Plan for said period.

153.    Plaintiff further seeks a declaration that she is entitled to interest on all benefits determined to have been wrongly withheld from her under the LTD Plan.

<u>COUNT VIII</u>
**(Declaration of Plaintiff's Rights Under the Life Insurance Plan – 28 U.S.C. §2201)**

154.    Plaintiff repeats and reaffirms the above paragraphs, as though fully set forth herein.

155.    Based on the above asserted facts and allegations, this matter constitutes a case in controversy under the Declaratory Judgment Act, 28 U.S.C. §2201 and Plaintiff is entitled to a declaratory judgment establishing her rights under the Life Insurance Plan.

156.    Plaintiff seeks a declaration that she has been continuously disabled under the terms of the Life Insurance Plan from January 17, 2015 through the present, and that she is entitled to any and all benefits wrongfully withheld under the Life Insurance Plan for said period.

WHEREFORE, Plaintiff prays for the following relief:

A.    That the Court enter judgment in Plaintiff's favor and against the Defendant and that the Court order the Defendant to pay LTD income benefits to Plaintiff in the amount equal to the contractual amount of benefits to which Plaintiff is entitled.

B.    That the Court order the Defendant to reinstate Plaintiff's LWOP benefits.

C.      That the Court order the Defendant to pay Plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment

D.      That the Court order the Defendant to continue paying Plaintiff benefits until such time as Plaintiff meets the policy conditions for discontinuance of benefits.

E.      That the Court award Plaintiff attorney's fees pursuant to 29 U.S.C. §1132(g).

F.      That the Court enter declaratory judgment clarifying and establishing Plaintiff's rights under the LTD Plan.

G.      That the Court enter declaratory judgment clarifying and establishing Plaintiff's rights under the Life Insurance Plan.

H.      For such other legal or equitable relief as this Court deems just and proper, as well as the costs of suit.

The Plaintiff hereby designates J. Scott Kilpatrick as Trial Counsel in this matter.

Plaintiff by her attorneys,

/s/ J. Scott Kilpatrick
J. Scott Kilpatrick, Esq. (#4036)
jskilpatrick@cck-law.com
/s/ Mason J. Waring
Mason J. Waring, Esq. (#7737)
mwaring@cck-law.com
Chisholm Chisholm & Kilpatrick LTD
One Turks Head Place - Suite 1100
Providence, RI   02903
(401) 331-6300 Telephone
(401) 421-3185 Facsimile